# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICK D. STEBBINS,** ) | NO. CV 17-6236-KS |
| **Plaintiff,** ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| **NANCY A. BERRYHILL**, **Acting** ) | |
| **Commissioner of Social Security,** ) | |
| **Defendant.** ) | |
| _____ ) | |

## INTRODUCTION

Patrick D. Stebbins ("Plaintiff") filed a Complaint on August 23, 2018, seeking review of the denial of his application for a period of disability, disability insurance ("DI"), and supplemental security income ("SSI"). On October 1, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 13, 15.) On April 6, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 19.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 41-42.) The Commissioner requests that the ALJ's decision be

1

affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 42-43.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 18, 2013, Plaintiff, who was born on January 28, 1956, protectively filed applications for a period of disability, DIB, and SSI.[1] (*See* Administrative Record ("AR") 228, 234.) Plaintiff alleged disability commencing September 30, 2009 due to: autism; ADHD; and a learning disability. (AR 258.) Plaintiff previously worked as a janitor (DOT 381.687-018) and groundskeeper (DOT 406.684-014). (AR 51, 259.) After the Commissioner denied Plaintiff's applications initially (AR 119) and on reconsideration (AR 143), Plaintiff requested a hearing (AR 187). Administrative Law Judge Peggy Zirlin ("ALJ") held a hearing on June 1, 2015. (AR 63.) Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Jeanine Metildi and Plaintiff's mother Phyllis Holmes. (AR 63-96.) On October 15, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's applications. (*Id.* 32-57.) On April 18, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* 9-14.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (AR 53.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since his September 30, 2009 alleged onset date. (AR 53.) The ALJ determined that Plaintiff had the following severe impairments: "hernia and organic mental disorder/learning disorder." (AR 53.) The ALJ concluded that Plaintiff did

---

[1] Plaintiff was 53 years old on the application date and thus met the agency's definition of a person closely approaching advanced age. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). Plaintiff has since changed age categories and is now a person of advanced age. *See id.* §§ 404.1563(e), 416.963(e).

2

not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 53.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "medium, simple work" as follows:

> [L]ift and/or carry up to 25 pounds frequently and 50 pounds occasionally, stand and/or walk about 6 hours in an eight-hour workday with normal breaks, sit about 6 hours in an eight-hour workday with normal breaks, pushing and pulling are unlimited other than for the weight restrictions given. Mentally, [Plaintiff] retains the residual functional capacity to understand, remember and carry out simple instructions, respond appropriately to supervisors, co-workers and customary work pressures, deal with simple changes in a routine work setting, use judgment on simple tasks with no public contact, working primarily with objects and not with people, no working in tandem with others do to the job tasks [sic], performing the same tasks in the same environment day to day and no need for more than occasional interaction with co-workers or supervisors to perform tasks.

(AR 53.)

The ALJ found that Plaintiff was able to perform his past relevant work as a janitor (DOT 381.687-018). (AR 57.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 57.)

\\
\\
\\

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

**I.  Issues in Dispute**

Three issues are in dispute: (1) whether the ALJ properly evaluated the opinion evidence provided by Plaintiff's treating and examining physicians and Plaintiff's vocational record (Joint Stip. at 3-29); (2) whether the ALJ properly evaluated the credibility of Plaintiff's statements about his symptoms and limitations (*id.* at 29-38); and (3) whether the ALJ properly determined Plaintiff's residual functional capacity and ability to perform his past relevant work (*id.* at 38-41). (Joint Stip. at 3.)

As explained in detail below, the Court finds that, with respect to the first issue in dispute, the ALJ failed to properly evaluate the medical evidence when assessing whether Plaintiff's diagnosis of Social Communication Disorder by the examining clinical psychologist, Dr. Brigitte Travis-Griffin, was a severe impairment at step two of the sequential analysis. Because a remand is necessary on that basis, the Court exercises its discretion not to reach the merits of Plaintiff's contentions regarding the ALJ's evaluation of the other medical and vocational evidence, her assessment of Plaintiff's credibility, her RFC determination, and her conclusion that Plaintiff can perform his past relevant work as a janitor.

Nevertheless, the ALJ is reminded that agency regulations instruct that consulting medical sources should be provided "any necessary background information about [the claimant's] condition." *See* 20 CFR §§ 404.1527, 416.927; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (affirming the ALJ's rejection of psychological assessments

by doctors who did not review objective medical data or reports from treating physicians or counselors). Further, in determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). An ALJ may not disregard the testimony of an intellectually disabled claimant's mother without comment, but, rather, must give specific reasons that are germane to that witness and supported by substantial evidence in the record. *See Bruce*, 557 F.3d at 1115. Finally, on remand, the ALJ must consider whether Plaintiff's condition meets or equals the revised criteria for Listing 12.05.[2]

\\
\\
\\
\\
\\
\\

---

[2] Plaintiff contends that the ALJ improperly evaluated the IQ scores assessed by examining clinical psychologist Brigitte Travis-Griffin, Psy.D., when she found that Plaintiff's mental disorder did not meet or equal the severity of a listed impairment on the grounds that "IQ scores alone are not a reliable measure of the [Plaintiff's] overall intellectual functioning due to the discrepancies between the scores and interpretation of those scores." (*See* Joint Stip. at 6; *see also* AR 45-46.) Defendant, however, contends that, regardless of any error made by the ALJ in her evaluation of Plaintiff's IQ scores, Plaintiff's condition did not meet or equal Listing 12.05, as it was defined at the time of the ALJ's decision, because the record indicates that Plaintiff did not have a full scale IQ score between 60 and 70 prior to attaining the age of 22. (*See* Joint Stip. at 20; AR 611 (reciting Plaintiff's 1971 IQ scores from the Antelope Valley Union High School District)); *see also* 20 C.F.R. § 404, Subpt. P, App'x 1.

Defendant's assertion is unavailing. In 2016, the Commissioner revised Listing 12.05 and the revisions became effective on January 17, 2017, after the date of the ALJ's decision but *before* the Appeals Council issued its decision. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,167 (Sept. 26, 2016); *see also id.* 81 Fed. Reg. 66,138 n.1 ("[W]e will use these final rules on and after their effective date, in any case in which we make a determining or decision."). The Appeals Council stated that it applied the revised rules when it denied Plaintiff's request for review (AR 9), but it provided no written rationale for its apparent finding that Plaintiff's condition did not meet or equal the revised Listing 12.05, which can be satisfied without proof of a full scale IQ score between 60 and 70 prior to age of 22 (*see generally id.*). *See also* 81 Fed. Reg. 66,167 According to the Commissioner, on remand, the ALJ must apply the revised Listing 12.05. *See id.*, 81 Fed. Reg. 66,138 n.1 ("If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.").

## II. The ALJ's Evaluation of the Evidence from Examining Psychologist, Dr. Brigitte Travis-Griffin at Step Two of the Sequential Analysis

### A. Dr. Travis-Griffin's Opinion

Plaintiff contends that the ALJ improperly evaluated portions of the opinion provided by examining clinical psychologist Brigitte Travis-Griffin, Psy.D., including, *inter alia*, improperly assessing whether Plaintiff's diagnosis of Social Communication Disorder by Dr. Travis-Griffin was a severe impairment at step two of the sequential analysis. (Joint Stip. at 5-7.)

In 2014, Plaintiff, who was then 58 years old, was referred to Dr. Travis-Griffin for a psychological assessment to determine his eligibility for services through the North Los Angeles County Regional Center (NLACRC), which provides services to individuals with Autism Spectrum Disorder, Intellectual Developmental Disability, and similar conditions. (AR 610.) Dr. Travis-Griffin examined Plaintiff on October 27, 2014. (AR 610.) Dr. Travis-Griffin reviewed reports from, *inter alia*: Ann L. Walker, Ph.D., who diagnosed Plaintiff with borderline intellectual functioning in 2011; Plaintiff's treating psychologist, Dr. Glenn Davis, PhD, MFT, who diagnosed Plaintiff with borderline intellectual functioning in 1993 but revised his diagnosis in 2006 to mental retardation, ADHD, and intermittent explosive disorder; Dr. Beck, M.D. Psychiatry, who diagnosed Plaintiff with Pervasive Developmental Disorder and Adjustment Disorder with Mixed Emotional Features in 1993; and Richard W. Burr, Ph.D., who assessed Plaintiff with an IQ score of 68 in September 1989. (AR 611.) Dr. Travis-Griffin also reviewed Plaintiff's more than forty year old IQ scores from the Antelope Valley Union High School District. (AR 611.)

Additionally, Dr. Travis-Griffin spoke with Plaintiff's mother, who reported that Plaintiff, at 13 months, experienced a series of health complications that included life-

threatening bleeding and required surgery and extensive rehabilitation. (AR 612.) During his recovery from these events, Plaintiff's speech, language, and cognitive skills regressed. (AR 612.) Plaintiff subsequently received special education services at Antelope Valley High School. (AR 612.) According to Plaintiff's mother, Plaintiff, *inter alia*, "never talks realistically about future career goals"[3] (AR 619), is never able to save money (AR 620), rarely works independently (AR 720), and requires ongoing monitoring, reminding, and prompting to ensure success when performing household and community-based activities (AR 620). Dr. Travis-Griffin noted that her review of Plaintiff's records confirmed Plaintiff's mother's reports that Plaintiff "has an ongoing history of asking ruminating questions and making untimely inappropriate, embarrassing, and hurtful statements . . . [which] have resulted in workplace reprimands." (AR 619.)

Dr. Travis-Griffin observed that Plaintiff presented with some speech articulation challenges and his comments were "consistently out of context" – he referenced decades old events as though they recently occurred. (AR 613-14.) Plaintiff required a moderate degree of prompts and re-directs and was not very responsive to subtle cues. (AR 614.) Plaintiff had difficulty transitioning from one task to the next and consolidating the directives given, and he was distracted by "non-essential visual stimuli in various test booklets." (AR 614.) Dr. Travis-Griffin wrote that Plaintiff "faltered in demonstrating his knowledge of how he would respond in his daily living situations; such as, under which conditions is it *not* appropriate to make specific comments. He also seemed to have difficulty distinguishing between the central meaning of an event and the extra information that surrounds it. He

---

[3] The vocational record supports Plaintiff's mother's suggestion that Plaintiff struggles to realistically assess his employability and job prospects. For example, on March 7, 2013, Plaintiff's job counselor made Plaintiff commit to stop contacting his prior employers, NASA and Antelope Valley Hospital, because Plaintiff had been "advised by Antelope Valley Hospital that he will never be hired again and NASA stated that his resume is on file and that they will contact him." (AR 555.) Nevertheless, in June 2014, Plaintiff defended himself against accusations that he had not been actively participating in the job search by claiming that he had recently contacted Antelope Valley Hospital regarding jobs. (AR 566.) Plaintiff's counselor responded that "[Plaintiff] is wasting his time . . . and [Antelope Valley] Hospital is a former employer who fired [Plaintiff] for his behavior." (AR 566.)

8

often focused on a minute detail of a particular situation, and had difficulty grasping the actual meaning behind the situation." (AR 614.)

Dr. Travis-Griffin administered the WAIS-IV. (AR 614.) Plaintiff scored in the borderline range on the Verbal Comprehension, receiving a 72, and scored in the mildly deficient range on: the Working Memory indices, receiving a 58; Perceptual Reasoning, receiving a 69; and Processing Speed indices, receiving a 62. (AR 614.) Plaintiff's full scale IQ was 60, in the mildly deficient range. (AR 616.) Based on these results, Dr. Travis-Griffin concluded that Plaintiff meets the criteria for an Intellectual Disability and 0.4% of the population is likely to score at or below Plaintiff's full scale IQ score. (AR 616.)

The Autism Diagnostic Observation Schedule Second Edition (ADOS-2) was administered to assess characteristics of Autism Spectrum Disorder. (AR 616.) The results indicated that Plaintiff did not meet criteria for an Autism Spectrum Disorder. (AR 617.) However, the test gave Dr. Travis-Griffin an opportunity to make the following observations of Plaintiff: he demonstrated limited knowledge of the simple feelings of others; he seemed limited in his ability to understand or appreciate the perspective of others; he displayed limited age-appropriate insight about the importance of his personal nutritional health, self-care, self-direction, and healthy relationships; and he showed limited indication of a sense of responsibility and insight about his own actions. (AR 617.)

Based on these assessments as well as Dr. Travis-Griffin's interview of Plaintiff's mother and review of Plaintiff's records, Dr. Travis-Griffin diagnosed Plaintiff with Intellectual Developmental Disability, Mild with "significant deficits in all areas of adaptive functioning, except self-care," and a Social Communication Disorder that causes functional limitations in effective social participation, social relationships, and occupational performance. (AR 621.) On December 15, 2014, following Dr. Travis-Griffin's assessment, Plaintiff was determined to be eligible to receive services through NLACRC. (AR 609.)

### B. ALJ's Assessment of Dr. Travis-Griffin's Opinion

The ALJ stated that she gave "great weight to the signs, findings, and test results from the Regional Center" – that is, NCLACRC – and found that Plaintiff has a severe organic mental disorder/learning disorder. (AR 45.) The ALJ also found that, although Dr. Travis-Griffin diagnosed Plaintiff with a Social Communication Disorder that causes functional limitations in effective social participation, social relationships, and occupational performance, Plaintiff's Social Communication Disorder was not a "severe impairment" for the purposes of step two of the sequential analysis – that is, it did not "more than minimally limit[] [Plaintiff's] ability to perform basic mental work activities" – because "the medical evidence of record does not document that [Plaintiff] has severe symptoms or severe functional limitations" from this disorder. (AR 46.)

### C. Analysis

The ALJ erred in her evaluation of the medical evidence for the purposes of determining whether Plaintiff's Social Communication Disorder, as diagnosed by Dr. Travis-Griffin, was a "severe impairment" at step two of the sequential analysis. The DSM-V, which was released on May 18, 2013, more than a year before Dr. Travis-Griffin examined Plaintiff, established Social Communication Disorder as a new diagnostic category. The diagnostic criteria for Social Communication Disorder include, *inter alia*:

> A. Persistent difficulties in the social use of verbal and nonverbal communication as manifested by all of the following:
> > (1) Deficits in using communication for social purposes, such as greeting and sharing information, in a manner that is appropriate for the social context;

(2) Impairment of the ability to change communication to match context or the needs of the listener, such as speaking differently in a classroom than on a playground, talking differently to a child than to an adult, and avoiding use of overly formal language;
    (3) Difficulties following rules for conversation and storytelling, such as taking turns in conversation, rephrasing when misunderstood, and knowing how to sue verbal and nonverbal signals to regulate interaction; [and]
    (4) Difficulties understanding what is not explicitly stated (e.g., making inferences) and nonliteral or ambiguous meanings of language (e.g., idioms, humor, metaphors, multiple meanings that depend on the context for interpretation)
B. The deficits result in functional limitations in effective communication, social participation, social relationships, academic achievement, or occupational performance, individually or in combination.

As stated above, the ALJ concluded that Plaintiff's Social Communication Disorder did not "more than minimally limit[] [Plaintiff's] ability to perform basic mental work activities" because "the medical evidence of record does not document that [Plaintiff] has severe symptoms or severe functional limitations" from this disorder. (AR 46.) The ALJ's assessment is not supported by substantial evidence in the record.

The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, *inter alia*: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1522, 416.922. "An impairment or combination of impairments may be found not

severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted). If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation and internal quotation marks omitted). "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted).

Contrary to the ALJ's conclusion, the medical evidence of record does not clearly establish that Plaintiff's Social Communication Disorder has no more than a minimal effect on Plaintiff's ability to work. *Cf. Webb*, 433 F.3d at 686. Plaintiff's treating psychologist, Dr. Glenn Davis, PhD, MFT, consistently observed that Plaintiff had difficulty with social participation (*see* AR 362, 391, 402 (Plaintiff "is not able to function adequately in any social environment for a sustained period in an appropriate manner"); *id.* 398-400 (Plaintiff is moderately limited in his ability to get along with coworkers or peers and "has not been able to maintain any long term employment due to socially inappropriate interactions"); *id.* 629-67 (treatment notes dating between January 9, 2012 through May 11, 2014 reflecting that Plaintiff demonstrates isolation and disturbed relationships and has functional impairments in the areas of work, family, and relationships)). Additionally, in Plaintiff's September 12, 2012 interview with the Commissioner's consulting examining psychologist, L. Roman, Ph.D., Plaintiff reported that he was first diagnosed with a mental disorder "a long time ago" when he was "not getting along with people at school." (AR 364.) Dr. Roman observed that Plaintiff "has difficulty encoding auditory information embedded in a social context." (AR 366.) Dr. Roman concluded, *inter alia*, that Plaintiff's ability to "accept instructions and respond appropriately to criticism from supervisors" was "limited."

(AR 368.) Finally, as stated above, Dr. Travis-Griffin: observed that Plaintiff's comments were "consistently out of context" (AR 613); observed that Plaintiff "faltered in demonstrating his knowledge of . . . under which conditions is it *not* appropriate to make specific comments" (AR 613-14); found that Plaintiff scored in the borderline range on Verbal Comprehension on the WAIS-IV (AR 614) and, on the ADOS-2, demonstrated limited knowledge of the simple feelings of others, a limited ability to understand or appreciate the perspective of others, and limited age-appropriate insight about healthy relationships (AR 617). In light of the foregoing, rather than "clearly establish[ing]" that Plaintiff's Social Communication Disorder only minimally affected his ability to work, the medical evidence of record appears to clearly establish the opposite – that Plaintiff's Social Communication Disorder significantly limits his mental ability to do basic work activities, including, *inter alia*, his ability to understand and carry out instructions and respond appropriately to supervision and co-workers.

This conclusion is buttressed by the vocational evidence provided by the California Department of Rehabilitation, which reflects that Plaintiff failed to carry out simple instructions from his supervisor at the NASA Dryden Flight Research Center[4] (AR 413 (on January 6, 2009, Plaintiff received a verbal warning after he failed to follow instructions to vacuum a series of rooms, despite being "shown where to go and what to do," and he incorrectly told his supervisor that he had completed the vacuuming)) and had persistent difficulties responding appropriately to supervision and getting along with his co-workers (*see* AR 424-26 (on July 27, 2007, Plaintiff received his third warning regarding his performance after he got into an argument with another employee that ended with the two employees throwing equipment and "one person [feeling] that [Plaintiff] acted in a threatening manner"); *id.* 466 (Antelope Valley Hospital terminated Plaintiff after he used profanity to one of his coworkers)); *id.* 477 (note dated May 31, 2007 states that Plaintiff

---

[4] Plaintiff obtained sheltered employment at the NASA Dryden Flight Research Center through PRIDE Industries and the California Department of Rehabilitation. (*See* AR 406, 412.)

13

was very verbally abusive towards a co-worker)); *id.* 595-96 (June 2007 report from Plaintiff's job coach, Sam Cohen, indicated that Plaintiff "doesn't always want to work as a team" and "has issues" with a co-worker)); *id.* 479 (a September 5, 2007 note states "[Plaintiff] appears to continue to have difficulty with interpersonal skills and in working as a team. [Plaintiff] does not accept supervision well and has had several difficulties interacting with his coworkers . . . [Plaintiff] has made rude comments on the radio when asked to perform tasks, *i.e.*, pick up other employees at the worksite and has been rude to job coach")). In light of the overwhelming weight of the medical and vocational evidence, the ALJ's determination that Dr. Travis-Griffin's diagnosis of a Social Communication Disorder was not a "severe impairment" at step two of the sequential analysis was not clearly established by the record and the matter must be remanded.

However, the Court cannot say on the record before it that there is no question that the ALJ would be required to find Plaintiff disabled and award benefits on remand. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017); *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021). Accordingly, the matter must be remanded for further proceedings consistent with this Order.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

14

# CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: September 6, 2018

　　　　　　　　　　　　　　　／s／ Karen L. Stevenson
　　　　　　　　　　　　　　　KAREN L. STEVENSON
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE